1

```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3    - - - - - - - - - - - -    X

 4   UNITED STATES OF AMERICA,    :   CR 07-543

 5                                 :

 6
        -against-                 :
 7                                     United States Courthouse
                                       Brooklyn, New York
 8   RUSSELL DEFREITAS            :
     KAREEM IBRAHIM
 9   ABDUL KADIR
     ABDEL NUR
10
                                       August 7, 2008
11        Defendants.            :    12:00 o'clock noon

12    - - - - - - - - - - - -    X

13
                     TRANSCRIPT OF CONFERENCE
14          BEFORE THE HONORABLE DORA L. IRIZARRY
                 UNITED STATES DISTRICT JUDGE
15

16   APPEARANCES:

17

18   For the Government:        BENTON J. CAMPBELL
                                 United States Attorney
                                 BY: JEFFREY KNOX
19                                   BERIT BERGER
                                 Assistant United States Attorneys
20                               271 Cadman Plaza East
                                 Brooklyn, New York
21
     For the Defendants:        ANDREW CARTER, ESQ.
22                               MILDRED WHALEN, ESQ.
                                 Federal Defenders
23                               Attorneys for R. DeFreitas,

24
                                 MICHAEL HUESTON, ESQ.
25                               Attorney for K. Ibrahim
```

2

                                    KAFAHNI NKRUMAH, ESQ.
                                    Attorney for A. Kadir

                                    DANIEL NOBLE, ESQ.
                                    Attorney for A. Nur

Court Reporter:         Gene Rudolph
                        225 Cadman Plaza East
                        Brooklyn, New York
                        (718) 613-2538

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

                         * * * * * * *


         THE CLERK:  Criminal cause for status conference,

docket number 07 CR 543, USA versus DeFreitas, et al.

         Government, please state your appearances.

         MR. KNOX:  Jeff Knox, Berit Berger for the

government.

         Good afternoon, Your Honor.

         THE COURT:  Good afternoon.

         MR. KNOX:  Adam Johnson from the MDC Legal

Department is also here at counsel's table.

         THE COURT:  Good afternoon, Mr. Johnson.

         MR. JOHNSON:  Good afternoon, Your Honor.

         THE CLERK:  For Russell DeFreitas?

         MR. CARTER:  Andrew Carter and Millie Whalen,

Federal Defenders of New York.

3

1          Good afternoon.

2          THE COURT:  Good afternoon.

3          THE CLERK:  For Kareem Ibrahim?

4          MR. HUESTON:  Michael Hueston for Mr. Ibrahim.

5          Good afternoon, Your Honor.

6          THE COURT:  Good afternoon.

7          Good afternoon, of course, to Mr. DeFreitas and

8   Mr. Ibrahim.

9          THE DEFENDANT:  Good afternoon.

10          THE CLERK:  For Abdul Kadir?

11          MR. NKRUMAH:  Good afternoon, Your Honor.

12          Kafahni Nkrumah.

13          THE COURT:  Good afternoon.

14          Good afternoon, Mr. Kadir.

15          THE CLERK:  For Abdel Nur?

16          MR. NOBLE:  Good afternoon, Your Honor.

17          Daniel Noble for Mr. Nur.

18          THE COURT:  Good afternoon, Mr. Noble, and good

19   afternoon, Mr. Nur.

20          THE DEFENDANT:  Good afternoon.

21          THE COURT:  Good afternoon.

22          I am going to ask, for these proceedings, so that

23   everyone can be heard and we make sure that we have the most

24   accurate record possible, to remain seated and speak into the

25   microphone, please.

4

1          This matter is on for a status conference.  Of

2     course, this is the first appearance for Messrs Kadir, Nur and

3     Ibrahim.

4          Where do we stand on this matter?

5          MR. KNOX:  Your Honor, three issues for the

6     government that we will update the Court on.

7          First, with respect to discovery, the Court has

8     signed a protective order governing discovery.  The government

9     has turned over all discovery to the counsel for the three new

10    defendants in the case.  We have also provided a copy of all

11    of the electronic discovery to the MDC, so that the defendants

12    can review that there.

13         So that's an update with discovery.

14         I also understand that the security clearance

15    process for counsel has begun, that the papers have

16    been -- have been turned over to counsel.

17         With respect to -- with respect to Mr. Noble, I

18    believe, there may be an issue that he does not want to be

19    cleared, at this time.  Maybe he could explain to the Court

20    why.

21         But the government's position on that is, at some

22    point in this case he is going to need to be cleared and if it

23    happens now, then no delay will be necessary.  If he waits

24    several months, then the proceedings are going to essentially

25    have to be put on hold while his clearance process takes

1  place.  Our experience is -- has been that that process can

2  take a month or two --

3          THE COURT:  Up to three months.

4          MR. KNOX:  -- To be completed.

5          So our strong preference would be to have it begun

6  now, promptly.

7          The government will also request, and does request,

8  a second CIPA Section 2 conference, to address any additional

9  classified material that may be relevant in this case in light

10  of the presence of the three new defendants.

11          What we recommend doing is scheduling the conference

12  about a month's time period, which should give us sufficient

13  time to see what, if anything, is out there and also give us a

14  better sense of how long it will take us to submit any filings

15  that will be necessary as a result of any classified material

16  that may be at issue.

17          We would suggest a conference in about a month.

18          Those are the issues that the government has.

19          THE COURT:  Why don't we start first with -- yes,

20  Mr. Noble?

21          MR. NOBLE:  Your Honor, since my name was mentioned,

22  I would like to address the representations made by the

23  government, which were somewhat stronger than the content of

24  my conversation with Ms. Berger.

25          My concern is, Your Honor, that, as every juror is

6

1    told, the parties stand equal before the Court.  Certainly, I

2    understand the need for security clearances.  I have actually

3    forty years ago had a low level security clearance when I was

4    in the Navy.

5              But it seems to me that the process that's going to

6    be used here is that we are going to have very limited access

7    to a succinct amount of material, that that material will be

8    contained in a room, secure room, and that at best we would be

9    able to take notes that would be maintained in a secure room.

10             Also, as defense counsel, I guess I have this

11   reflexive reaction when a very, very probing investigation is

12   requested by the government.

13             The position I was taking with Miss Berger was,

14   first of all, is there -- is there going to be any secure

15   information.  I actually did not get a strong affirmation, not

16   as strong as has been represented to the Court this morning,

17   that there would be any such material.

18             I think that that is certainly a reasonable

19   prerequisite, that counsel not be required to fill out waivers

20   of personal information such as tax returns, access to my

21   military record, and other private historical information if

22   there is not going to be any security information made

23   available to counsel.

24             My second concern, Your Honor, is that the materials

25   that we have been provided are not tailored to the limited

1   access to whatever it is that we might be shown.  The forms

2   that we have been given are routine government forms that are

3   distributed to individuals who are going to take jobs within

4   the government, where they would have access to whatever level

5   of security it is.  I am not familiar enough with their forms.

6            THE COURT:  There were various different levels of

7   security, as I understand it.  Even my law clerks have to go

8   through the security clearance if they are going to assist me

9   in reviewing any classified information that may be

10  distributed.  The government may want the Court to review such

11  classified information before, perhaps, for protective orders

12  and so on under the CIPA statute.  Quite frankly, the

13  nightmare I had was sitting in a room with boxes of material

14  and not having a law clerk to help me.

15           I am having all three of my law clerks go through

16  what I understand is an intrusive security clearance.  I went

17  through it, too, to get to this position.

18           Mr. Carter and Ms. Whalen have gone through it and

19  so has Mr. Hueston, by the way.  I have gotten word from DOJ,

20  Mr. Hueston, because of the prior clearance, has already -- I

21  think his papers have already gone through.

22           Am I correct?

23           Did anyone contact you, Mr. Hueston?

24           MR. HUESTON:  That is correct, Your Honor.  We are

25  just finalizing the procedure now.

8

1        THE COURT:  Right.

2        I understand, because it is an intrusive procedure

3   and I certainly understand it.  I am in the same position as

4   defense counsel because I don't know what material is going to

5   be produced down the road by the government.

6        But I share the concern that the government has,

7   that if indeed we do get to that point, however limited the

8   material may be, it may be critical material and it may be

9   critical material to the defense of your client and these

10  security clearances do take a minimum of two months, if it is

11  going to be rushed, and more of an average of three months.  I

12  would hate to have that delay the case for all of the

13  defendants concerned because you would rather not go through

14  the clearance at this point in time.

15       MR. NOBLE:  Your Honor, I don't mind going through

16  the clearance.  I think the biggest problem with my going

17  through the clearance would be for the government to provide

18  sufficient coffee to the agents who are investigating me, to

19  keep them awake, as they go through my rather -- the mundane

20  details of my personal life.  That's not my real concern.

21       My concern is more a generic one as defense counsel.

22  I -- I guess what struck me in looking at the materials, these

23  materials are in no way designed for the situation in which

24  defense counsel would be seeking clearance.  These materials

25  were designed -- they are just routine.

GR        OCR        CM        CRR        CSR

9

1         THE COURT:  You mean, the materials you are given

2    now?

3         MR. NOBLE:  No.

4         The materials, the form, the format of the

5    questionnaire that we are being asked to fill out, is not one

6    tailored to these circumstances.  Those forms are very clearly

7    the forms that are distributed to a certain level of applicant

8    to certain government jobs.

9         It strikes me that, while I completely agree with

10   the government -- I mean, with the Court, and I understand why

11   such clearances are necessary, it strikes me that it is not an

12   unreasonable request to make, that the government tailor their

13   request for personal access -- for access to personal

14   materials of defense counsel to the actual circumstances that

15   are anticipated in an individual case and not some blanket

16   investigation that goes far beyond what they really need to

17   satisfy themselves that there would be no security breach if

18   counsel is given access in the manner that we would be given

19   that access in this individual case.

20        I guess that's my real concern.

21        THE COURT:  Do you want to address that, Mr. Knox?

22        MR. KNOX:  Your Honor, in effect, I think he's just

23   taking issue with the clearance process that would apply in

24   any criminal case in which classified material may be

25   relevant.  Frankly, I don't know what to say, other than this

1  is the process that, and the forms that the government has in

2  place and presumably have had in place for some time and they

3  have been used time and time and time again.

4          Beyond that, I haven't seen the forms, but we

5  wouldn't be going through this process right now if we thought

6  it was going to be a waste of time.  We don't -- in 99 percent

7  of cases we don't ask the defense counsel to get cleared.  We

8  are suggesting it here for a reason, because we think it may

9  well be an issue and we think it is important that this

10  process get started now so that it doesn't delay the

11  proceeding.

12          And in terms of individual questions that

13  he -- Mr. Noble takes issue with in the form, I would be happy

14  to raise that with Washington.  But my guess is, if -- you

15  know, we are talking about delays.  This could delay the

16  process for several months, just addressing the question by

17  question in these very standard forms.

18          THE COURT:  The forms are what they are.  The agency

19  doing the investigations is not just going to rely on the

20  forms, but they are also going to conduct interviews and so

21  on.  They are going to do whatever else they have to do to go

22  through the clearance process.

23          Frankly, I don't think that it is within my purview

24  to direct them to change the security clearance process

25  because one person thinks that they are too generic and they

1    should be changed somehow.

2            Let me just say this, that I did contact our DOJ

3    liaison, Mr. Macisso, to make sure that the security clearance

4    process with respect to defense counsel got started as soon as

5    possible because I do have a concern.  Mr. DeFreitas' case has

6    been pending now for close to a year awaiting the extradition

7    of his codefendants.  Certainly, he has an interest, as do the

8    codefendants, in having a speedy resolution of this matter as

9    is possible.

10            I think that that's all I can say to you, Mr. Noble,

11   is to take that under advisement, but it is -- I have to say,

12   that I don't view favorably any kind of delay based on simply

13   a refusal now because you need to have some proof that somehow

14   later this might become necessary.  The government is

15   representing that in their view it is going to become

16   necessary.  I don't think they would make that statement

17   unless they believed it in good faith.

18            MR. NOBLE:  That's -- like I said, Your Honor, it is

19   the first time the representation has been stated with that

20   degree of force and clarity.

21            But I don't mean to make a big issue of this, Your

22   Honor.  Like I said, I have gone through security clearances

23   before and even though it was some decades ago, I will see to

24   it that the local FBI office has a good supply of strong

25   coffee and tell my neighbors to expect a nice knock on the

12

1    door.  I hope not during dinner hour.

2           THE COURT:  Okay.  Mr. Carter  or Ms. Whalen, with

3    respect to Mr. DeFreitas, I don't have, as far as I know, any

4    outstanding requests as to any of the defendants with the

5    exception that Mr. DeFreitas's petition for habeas corpus had

6    been put in abeyance pending the administrative resolution.

7           Do you have an update as to what is happening with

8    that?

9           MR. CARTER:   Yes, Your Honor.

10          We anticipate that we should hear from the central

11   office by the 15th, by next Friday.  We are optimistic but not

12   particularly hopeful that they will come out our way.

13          Assuming that they don't, that's something that we

14   could certainly raise at the next status conference when we

15   have the CIPA issue addressed before the Court.  We filed the

16   final appeal.  I have spoken to Mr. Johnson who has been very

17   helpful in that regard, and we should hear from them by next

18   Friday.

19          THE COURT:  Okay.  Just so that we are clear, that

20   should be then Friday, the 15th?

21          MR. CARTER:  That is correct.

22          THE COURT:  As to Mr. Ibrahim -- is that all that

23   you wanted to raise with respect to Mr. DeFreitas?

24          MR. CARTER:  That's all at this time, Your Honor,

25   yes.

13

1          THE COURT:  As to Mr. Ibrahim, Mr. Hueston?

2          MR. HUESTON:  Your Honor, we --

3          THE COURT:  I need for you to sit and talk into the

4  microphone.

5          MR. HUESTON:   I am so used to standing up.

6          THE COURT:  I know.

7          MR. HUESTON:  You are referring to the issue about

8  the examination, Your Honor?

9          The orders are in place.  They have been submitted

10  to MDC legal and I believe the government is starting its

11  process in terms of making the competency evaluation for

12  Mr. Ibrahim.

13          I am in contact with my expert, Barry Rosenfeld,

14  Doctor Barry Rosenfeld, and we are going to -- the way it is

15  set up, Your Honor, the government is going to make their

16  examination.  We will conduct our examination after.  I

17  anticipate that Doctor Rosenfeld will be in contact with

18  Mr. Ibrahim, in any event, to begin to meet with him so we can

19  make that assessment so we can go through the process as soon

20  as possible.

21          THE COURT:  Okay.

22          MR. HUESTON:   If there is an issue to be raised, I

23  will raise it with the government and Your Honor, but at this

24  point there is nothing new to report besides the fact that the

25  process has started.

1    THE COURT:  Okay.  Thank you.

2    As to Mr. Kadir?

3    MR. NKRUMAH:  Again, good afternoon, Your Honor.

4    As far as Mr. Kadir is concerned, there is no

5    progress.  We have received discovery from the government.

6    I would make a side note, that I do join Mr. Noble

7    in his application about the security clearance.  When I spoke

8    to the attorneys in my office, we all were kind of taken aback

9    the fact that if for some unforeseen chance we are unable to

10   pass the security clearance, the government gets to basically

11   pick who our client's attorneys can be.  Other than that fact,

12   I have heard the explanation that the Court has given to

13   Mr. Noble, we will abide by that and we will fill out the

14   applications as quickly as possible.

15   THE COURT:  Thank you.

16   MR. NKRUMAH:  And other than issues of personal

17   property that Mr. Kadir says wasn't returned to him after me

18   meeting with the agents, which I will again speak to the

19   US Foreign office about, we have no new issues at this time.

20   THE COURT:  Okay.  So you will consult with the

21   government.

22   Anything else that you would like to add as to

23   Mr. Nur as far as discovery or any other matters that are

24   pending?

25   MR. NOBLE:  Yes, Your Honor.  I don't mean to signal

GR      OCR      CM      CRR      CSR

1   that I am going to be obstreperous throughout these

2   proceedings, Your Honor, but I did give it some thought.

3   There are some issues that I hope the Court will find to be

4   worthy of the Court's consideration.

5         In reviewing all of the materials available to me,

6   Your Honor, it appears that the government would have

7   transcripts of many of the recorded conversations that we have

8   been given electronic versions of.  I am sure Your Honor would

9   understand that reviewing these transcripts is very, very much

10   more efficient than listening to conversations that were very

11   heavily of the nature of a consensual conversation where

12   somebody is spending a day or so in the presence of another

13   individual.  So trying to skim through an electronic recording

14   to find what might be relevant in general and relevant to

15   personal -- an individual defendant, is difficult in an

16   electronic format.

17         If transcripts are available, and I believe that

18   they are, that they be turned over as soon as possible.

19         Also, Your Honor, I think it is going to become

20   necessary, given the nature of the case, its complexity and

21   the fact that a great many of the relevant events take place

22   either in Trinidad or Guyana, for counsel to have access to

23   either expert services, investigative services and travel to

24   the venues where relevant events to the case are alleged to

25   have taken place, and at this time I am merely inquiring of

1   the Court whether or not there is a procedure that you

2   normally follow that counsel can adhere to to submit requests

3   that we be able to undertake these types of activities, or if

4   there is something the Court wants to think about.

5          I just wanted to get that out there.  It seems

6   pretty clear, that it is going to become necessary at some

7   point in the proceeding.

8          THE COURT:  In fact, I have been thinking about

9   precisely those issues.  This is obviously a very unusual

10  case.  It doesn't follow the pattern of most of the criminal

11  cases that come through the doors of this courtroom or the

12  courthouse in particular.

13         But it may be that this case, because of the nature

14  of the charges and for the reasons that you just stated,

15  Mr. Noble, may be the kind of case that should have a case

16  budgeting plan, a CJA budgeting plan, because we have three

17  counsel.  I'm sure the Federal Defenders would be interested

18  in that too.

19          Mr. Tritz, who handles CJA financial issues for the

20  Second Circuit, is going to be contacted by me very soon to

21  start opening up that process and to see if perhaps we can't

22  set up some kind of meeting or see what procedures he has in

23  place for setting up that kind of budgeting.

24         As a general matter, I just entertain applications

25  as they arise, as the need arises, either for an expert, and

1   so on.  But I think that this case might best lend itself to

2   some kind of planning in advance so that counsel has an idea

3   of what they want to do, the government is aware.  They may

4   want to make request for experts and so on as well and so that

5   the Court can keep track of the costs without necessarily

6   hindering the defense in doing what they need to do to defend

7   their clients, which is always difficult in complex cases,

8   especially such as this one.

9          That is probably something that we should address at

10  the next conference.  I hope we will have some more

11  information and I will have my -- if I think that a meeting

12  with counsel to discuss case budgeting, I don't think that the

13  defendants necessarily need to be present for that, but if a

14  meeting is necessary to have all the attorneys present to

15  discuss that, I will have my deputy arrange that at a date

16  that's convenient for everyone concerned.

17         MR. NOBLE:  Your Honor, would you have any

18  objection if counsel independently contacted Mr. Tritz?  I

19  happen to know Mr. Tritz from a previous phase of his career

20  when he was defense counsel and as --

21         THE COURT:  I have no problem with that.

22         MR. NOBLE:  Thank you.

23         THE COURT:  I have no problem with that.  In fact, I

24  know that he's always available to speak to CJA counsel.  I'm

25  sure he will welcome any calls from the attorneys, if you wish

18

1    to do that.

2              Okay.  Is there anything else?  Yes.

3              MR. KNOX:  Your Honor, I will briefly address the

4    transcript issue.

5              THE COURT:  Yes, please.

6              Thank you.

7              MR. KNOX:  We are in the process of working on

8    transcripts.  We do have some that are not in final form but

9    are in fairly good shape.

10             What we will do is, we will submit a proposed draft

11   transcript stipulation to counsel that will govern the use of

12   these transcripts and then what I hope is that we will agree

13   on a stipulation and then we can submit it to the Court for

14   the Court's signature.  At that point then we will start

15   turning over our draft transcripts on a rolling basis, as we

16   have them.

17             THE COURT:  How long do you think that's going to

18   take?

19             MR. KNOX:  I think we could probably get a

20   stipulation, draft stipulation out in the next week and then

21   as soon as it is agreed upon and entered by the Court,

22   immediately start turning over transcripts.

23             THE COURT:  Okay.  That is fine.

24             It does seem that the defendants' request is a

25   reasonable one, especially since they already have the

GR      OCR      CM      CRR      CSR

19

1    recordings, to have the transcripts to follow along.

2              Is there anything else before we work on setting a

3    conference date?

4              MR. NOBLE:  No objection.

5              MR. KNOX:  Nothing from the government, Your Honor.

6              THE COURT:  With respect to the CIPA conference, is

7    September 12th a good date?

8              MR. NOBLE:   Your Honor, could we go one week more?

9    I may be away that week.  I'm hoping to be away that week.

10             THE COURT:  How about the 19th, in the afternoon, if

11   all counsel are available?

12             MS. HUESTON:   That's fine with me, Your Honor.

13             THE COURT:  Say 2:30.

14             MR. CARTER:  Yes.

15             MR. KNOX:  That's fine with the government, Your

16   Honor.

17             THE COURT:  Do counsel consent to the exclusion of

18   time until then?

19             MR. HUESTON:  Yes, Your Honor.

20             MR. NKRUMAH:  Yes, Your Honor.

21             MR. CARTER:  Yes, Your Honor.

22             MR. NOBLE:  Yes, Your Honor.

23             THE COURT:  As to all defendants, time is excluded

24   on consent.

25             Mr. Knox, I just want to clarify something with

GR      OCR      CM      CRR      CSR

20

1    respect to the CIPA conference at this time.  Is that a

2    conference that -- did you need an ex parte conference?  I

3    believe that we had to review some documents in chambers with

4    respect to Mr. DeFreitas initially in the beginning of the

5    case.

6              MR. KNOX:  I believe --

7              THE COURT:  I just want to clarify.

8              MR. KNOX:  That will not be the ex parte conference.

9    If there is a need for any ex parte conference, it will be

10   after the date of the CIPA Section 2 conference.

11             THE COURT:  Which will be the 19th?

12             MR. KNOX:  Right.

13             THE COURT:  Okay.  I just wanted to clarify that.

14             Okay.  All right.

15             MR. NOBLE:  Your Honor, it is my understanding the

16   defendants will not be produced for that conference?

17             THE COURT:  For the 19th?

18             MR. NOBLE:   Yes, Your Honor.

19             THE COURT:  I see no reason why the defendants

20   should not be produced.

21             MR. KNOX:  They were last time.

22             THE COURT:  Yes.

23             MR. NOBLE:  Okay.

24             MR. KNOX:  There is no reason not to.

25             MR. NOBLE:  Perhaps I misunderstood.

1        THE COURT:  There is no reason not to, barring

2   illness or anything like that.

3        MR. NOBLE:  That's fine.

4        MR. KNOX:  Your Honor, that may also be a good time

5   to discuss any new discovery issues or anything else that

6   could arise between now and then.

7        THE COURT:  Of course, as counsel are I'm sure

8   aware, most of you have appeared before me before except for

9   Mr. Nkrumah, I do everything electronically.  Obviously, if

10  there is a need for something to be filed under seal, then you

11  just make the application.

12        I ask for two courtesy copies to be provided along

13  with the original of the appropriate sealing documents.  Of

14  course, I will make an assessment at that time whether it

15  should be filed under seal or not, and let the parties know

16  promptly.

17        I will not be available -- I will not be formally in

18  court the last two weeks of August.  However, I will be

19  keeping track of ECF filings and should have remote access.

20  If you get done with the proposed transcript order, by all

21  means, do file it electronically and I will make sure

22  that -- I will be looking out for it, so I can address that

23  electronically, if necessary.  I don't want the fact that I am

24  not here to cause any delay in counsel getting access to the

25  transcripts.

22

1          MR. NKRUMAH:  Your Honor, this is a side note.

2  Bearing on the -- bearing on the care of my client, Mr. Kadir,

3  as the Court is aware, Mr. Kadir is Guyanese citizen.  His

4  family, his immediate family, actually all of Mr. Kadir's

5  family except one, maybe two of his children, reside in

6  Guyana.  His children do not reside in New York.

7          Mr. Kadir until, I believe it was the Tuesday or

8  yesterday, had not had contact with his family from the --

9  from the time of his extradition from Trinidad.  I would ask

10 this Court to possibly arrange, if it is possible, some way

11 that the Bureau of Prisons can allow Mr. Kadir to have

12 contact, phone contact, with his family.

13         As the Court is aware, Mr. Kadir is incarcerated and

14 he has no funds in order to put in commissary in order to put

15 in to pay for phone calls.  Contact with his family is an

16 important aspect for Mr. Kadir providing assistance in his

17 defense and I would ask the Court to make some type of

18 arrangements so he could have weekly contact with his family,

19 if possible.

20         MR. KNOX:  Your Honor, just speaking with

21 Mr. Johnson, he advises me that there are procedures in place

22 at the MDC for indigent defendants to arrange for this type of

23 service.  Beyond that, I don't really have anything to add,

24 other than he should take it up, I guess, with the MDC.

25         THE COURT:  I know that there are counselors

1   available at the MDC for him to confer with so that they can

2   let him know what the appropriate procedures are for him to

3   make that application.

4           Mr. Johnson is here.  I invite you, Mr. Nkrumah,

5   perhaps to confer with him at the end of these proceedings.

6   Mr. Johnson has been very helpful in both seeking medical

7   accommodations and some other accommodations in the case.  So

8   that perhaps if he can clarify what those procedures are for

9   you and you can communicate that to your client, perhaps that

10  might be helpful.

11          MR. NKRUMAH:  That will be helpful, Your Honor.

12          Thank you.

13          THE COURT:  Yes?

14          MR. CARTER:   Your Honor, I would just -- I would

15  like an earlier date for Mr. DeFreitas because -- to deal with

16  the issue of the pending writ since we do anticipate a

17  response by August 15th.  I understand Your Honor is out the

18  last two weeks in August.

19          Is Your Honor available on September 5th or any time

20  that week, the week after Labor Day?  The week of Labor Day?

21          THE COURT:  I am.  I am available Thursday,

22  September 4th or in the afternoon of Friday, September 5th.

23          MR. CARTER:  Could we have the afternoon of

24  September 5th then?

25          THE COURT:  Is 2:30 good?

24

1          MR. CARTER:  That's fine.

2          THE COURT:  That will be Mr. DeFreitas only.

3          MR. CARTER:  Yes.

4          THE COURT:  Anything further?

5          MR. KNOX:    Nothing for the government, Your Honor.

6          THE COURT:  Counsel, anything further?

7          MR. HUESTON:  No, Your Honor.

8          MR. NOBLE:  No, Your Honor.

9          Thank you, Your Honor.

10          MR. NKRUMAH:  No, Your Honor.

11          MR. CARTER:   No, Your Honor.

12          THE COURT:  Okay.  Thank you.

13          I am going to ask everyone to remain seated while

14    the defendants are escorted.

15          Good afternoon, gentlemen.  We will see you back

16    here in court on September 19th.

17          (The defendants leave courtroom.)

18          THE COURT:  Thank you.

19          The proceedings are concluded.

20          (Matter concludes.)

21

22

23

24

25