UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,  :
:
              -against-  :
:
RUSSELL DEFREITAS,  :
    also known as "Mohammed,"  :
KAREEM IBRAHIM,  :
    also known as "Amir Kareem"  :
    and "Winston Kingston,"  :
ABDUL KADIR,  :
    also known as "Aubrey Michael Seaforth,"  :
AND ABDEL NUR,  :
    also known as "Compton Eversley,"  :
:
              Defendants.  :
------------------------------------------------------------------x

**MEMORANDUM & ORDER**

07-CR-543 (DLI)(SMG)

**DORA L. IRIZARRY, United States District Judge:**

Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, Defendant Russell Defreitas moves to suppress evidence seized from an apartment in Brooklyn, New York. Pursuant to the Sixth Amendment to the United States Constitution, all defendants move to suppress certain out-of-court statements, or, in the alternative, to sever the trial pursuant to Federal Rule of Criminal Procedure 14(a).[1] Defendants Kareem Ibrahim and Abdul Kadir also move for severance on the ground of prejudicial spillover. For the reasons set forth below, Defreitas' motion to suppress evidence seized from the Brooklyn apartment is denied in its entirety. The motions to suppress the out-of-court statements are granted in part and denied in part. Finally, the motions to sever the trial are denied in their entirety.

---

[1] Defreitas also moves, pursuant to the Fifth Amendment, to suppress statements made by him at the time of his arrest. On March 23, 2010, the court held a hearing at which it denied this motion. This hearing addressed only the use of these statements against Defreitas himself; the issue of their use against his co-defendants is discussed in Part II.B, *infra*.

1

## I. BACKGROUND

Familiarity with background of this case is presumed. *See generally United States v. Defreitas et. al.*, 2010 WL 1223244 (E.D.N.Y. Mar. 24, 2010). The court reiterates the following undisputed facts as they relate to the issues at bar. On June 1, 2007, Joint Terrorism Task Force ("JTTF") agents arrested Defreitas pursuant to a warrant, and transported him to 26 Federal Plaza, New York, New York. There, he made a number of statements to the agents prior to invoking his *Miranda* rights. (*See* Docket Entry No. 159, Ex. A.) Also on June 1, the government requested extradition of Ibrahim, Kadir and Abdel Nur from Trinidad and Tobago, pursuant to an extradition treaty between that country and the United States. Kadir was arrested in Trinidad that same day, and Ibrahim was arrested on June 2. Nur surrendered to Trinidadian officials on June 5, 2007. On August 6, 2007, the Trinidadian government commenced extradition proceedings against these three defendants. After extradition to the United States was granted, each defendant sought habeas relief from a Trinidadian court, which was denied. In the course of these habeas proceedings, each of the three defendants, represented by Trinidadian counsel, filed sworn affidavits. (*See id.* Exs. B–D.) The Trinidadian court denied defendants' habeas petitions and they were extradited to the United States.

On February 28, 2008, JTTF agents obtained a warrant to search the premises located at 740 Euclid Avenue, Apartment 6G, in Brooklyn, New York, where Defreitas had resided prior to his arrest. (*See generally* Addonizio Aff., Ex. G.) The warrant authorized the seizure of:

> [c]ertain property, namely, items, documents and other related information concerning communications, travel, bank accounts and contacts of defendants charged with terrorism-related crimes in the Eastern District of New York and other individuals engaged in terrorist-related activity, all of which are related to a conspiracy to unlawfully deliver, place, discharge and detonate an explosive device in, into and against a public transportation system, to wit: John F. Kennedy International Airport, and an infrastructure facility, to wit: fuel tanks and pipelines at John F. Kennedy International Airport, with the intent to cause death and

serious bodily injury and the intent to cause extensive destruction of such system and facility, where such destruction would result in and would be likely to result in major economic loss, and this constitutes evidence, fruits and instrumentalities of violations of federal law, including 18 U.S.C. § 2332f(a)(1).

(*Id.*, Ex. G at 9–10.) While executing the warrant on March 5, 2008, the JTTF agents "seized various items of evidence described in the warrant, and also removed the remaining property from the apartment, which . . . is owned by New York City." (*Id.* ¶ 8.) "JTTF agents inventoried both the evidence and the remaining property." (*Id.*; *see also id.* Ex. H (providing inventory).) On March 30, 2010, in response to the court's Order, the government specified which items were seized pursuant to the warrant, and which were simply "being held for safekeeping [and] not intend[ed] to [be] offer[ed] . . . at trial." (Docket Entry No. 182, at 2.)

## II. DISCUSSION

### A. Scope of the Brooklyn Search Warrant

Agents executing a warrant are bound by its scope. *See Horton v. California*, 496 U.S. 128, 140 (1990). In interpreting a warrant's scope, agents "have some discretion" and their interpretation should be "commonsensical," not "hyper-technical." *United States v. Salameh*, 54 F. Supp. 2d 236, 277 (S.D.N.Y. 1999), *aff'd*, 16 F. App'x 73 (2d Cir. 2001); *see also United States v. Catapano*, 2008 WL 3992303, at *3 (E.D.N.Y. Aug. 28, 2008) (noting that a broad interpretation of a search warrant as directed by *Salameh* is proper as it "provid[es] the agents with the discretion necessary to reasonably conduct a search").

The warrant in question authorized the seizure of "items, documents and other related information concerning communications, travel, bank accounts and contacts of defendants . . . ." (Addonizio Aff., Ex. G at 9–10.) Having carefully reviewed the list of seized items which the government may offer at trial, the court is satisfied that all of them fall within the scope of the warrant. (*See id.* Ex. H (listing, *inter alia*, "One Envelope containing Queens County Savings

3

Bank statement . . . One Caribbean Airline confirmation . . . One white Southwestern Bell Freedom Phone . . . One Black Phonebook/Planner").) Accordingly, Defreitas' motion to suppress these items is denied. The government will, of course, have to demonstrate the relevance of any item it attempts to introduce at trial in accordance with Federal Rules of Evidence 401, 402 and 403.

### B. Defendants' Out-of-Court Statements

#### 1. *Bruton/Richardson* Redaction

"[A] defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating [statement] of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the [statement] only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (citing *Bruton v. United States*, 391 U.S. 123, 135–36 (1968)). While the Confrontation Clause problem is mitigated when the defendant's name is redacted from the statement in question, such statements can still violate *Bruton* if they "obviously refer" to the defendant and "involve inferences that a jury ordinarily could make immediately, even were the [statement] the very first item introduced at trial." *Gray v. Maryland*, 523 U.S. 185, 196 (1998).

As the Second Circuit has noted, "[t]he critical inquiry is always whether introduction of a [statement] at a joint trial presents an 'overwhelming probability' that the jury will not be able to follow an instruction limiting consideration of the [statement] to the declarant defendant." *United States v. Jass*, 569 F.3d 47, 56 n.5 (2d Cir. 2009) (quoting *Richardson*, 481 U.S. at 208). Acknowledging that "the line between testimony that falls within *Bruton*'s scope and that which does not is often difficult to discern," *United States v. Lung Fong Chen*, 393 F.3d 139, 149 (2d Cir. 2004), the Second Circuit has provided the following guidance:

> Where redaction is employed to avoid *Bruton* concerns . . . we urge district courts, wherever possible, to eliminate completely . . . any mention of a non-declarant defendant's existence . . . . Neutral pronoun substitution should be employed only when complete redaction would distort the [statement], for example, by excluding substantially exculpatory information, or changing the tenor of the utterance as a whole.

*Jass*, 569 F.3d at 56 n.5 (citations and internal quotation marks omitted).

On March 8, 2010, the government provided copies of the statements it "may seek to use at trial, either in its case-in-chief or during a rebuttal case," along with its proposed *Bruton/Richardson* redactions. (Docket Entry No. 159, at 1.) Defendant Nur did not respond. Defendants Ibrahim and Kadir responded that no amount of redaction is sufficient to cure the Confrontation Clause problem inherent in these statements, and that they should therefore be suppressed in their entirety.[2] Defendant Defreitas responded by proposing three redactions in addition to those submitted by the government. (*See* Docket Entry No. 169, at 1–2.)

The government agreed to Defreitas' first two proposals (*see* Docket Entry No. 185, at 10–11), but contested the third—a proposed redaction to a portion of Kadir's statement. (*See id.* at 11.) However, the same reasoning that justifies Defreitas' second proposal applies to the third, as the wording of that third statement is substantially the same as the second. Accordingly, the court approves all three of Defreitas' proposed redactions, along with all of the government's, noting that together, they remove, to the extent possible, "any mention of [the] non-declarants' existence." *Jass*, 569 F.3d at 56 n.5.

It is worth noting here that *Bruton* and *Richardson* are only implicated by the statements of a *non*-testifying co-defendant. *See* 481 U.S. at 207. Should any declarant defendant testify, there is no Confrontation Clause issue, as he would be subject to cross-examination by both the government and his co-defendants. For this reason, the government may impeach any defendant

---

[2] (*See* Docket Entry Nos. 168, 172.) This argument is addressed in Part II.B.2, *infra*.

who testifies with his own *un*-redacted prior statements. It may introduce the *redacted* versions in its case-in-chief, so long as it is against the respective declarants, and accompanied by the court's limiting instruction as discussed below.

### 2. *Crawford* Confrontation

Notwithstanding the above, defendants maintain that no amount of redaction is sufficient to cure the Confrontation Clause problems raised by the statements in question in light of *Crawford v. Washington*. *See* 541 U.S. 36, 67 (2004) (holding that Sixth Amendment prohibits use of testimonial evidence against defendant unless declarant is unavailable and testimony was subject to prior cross-examination). Specifically, defendants cite to several recent Second Circuit decisions for the proposition that, post-*Crawford*, the government may not use the statements in question to prove the existence of a conspiracy charged against all defendants. *See United States v. Riggi*, 541 F.3d 94, 102 (2d Cir. 2008); *United States v. Becker*, 502 F.3d 122, 130 (2d Cir. 2007); *United States v. Santos*, 449 F.3d 93, 100 (2006). Defendants argue that these cases mandate either complete suppression of the statements, or severance of the trials. *See Jass*, 569 F.3d at 56 n.5 ("In circumstances where a court concludes that no redaction can overcome [a *Bruton/Richardson* problem], only two options are available: severance or exclusion of the [statement] at a joint trial."). Defendants further contend that, because *Bruton* did not involve a conspiracy, the application of that case and its progeny are "questionable" in a case where "the co-defendant statements intertwine with the nature and scope of the conspiracies with which all defendants are charged." (Ibrahim Reply 8.)

As an initial matter, the Second Circuit has squarely considered the impact of *Crawford* on the *Bruton* line of cases, and held that *Crawford* neither "overrules *Richardson* [n]or expands the holding of *Bruton*." *Lung Fong Chen*, 393 F.3d at 150; *see also id.* ("The same attenuation of

6

[declarant]'s statements from [defendants'] guilt that prevents *Bruton* error also serves to prevent *Crawford* error."). Furthermore, the contention that a *Bruton* analysis is different when applied to a conspiracy charged against all defendants is baseless in light of *Lung Fong Chen*. *See* 393 F.3d at 142 (affirming conviction for conspiracy to misapply bank funds charged against all three defendants); *United States v. Scott*, 624 F. Supp. 2d 279, 289–90 (S.D.N.Y. 2008) (rejecting *Crawford* argument in context of conspiracy to commit Hobbs Act violation charged against both defendants); *see also United States v. Homick-Van Berry*, 240 F. App'x 966, 968, 970–71 (3d Cir. 2007) (affirming conviction of two defendants each charged with conspiracy to commit robbery against *Crawford* challenge). That said, defendants are correct that *Crawford* precludes the use of each of the four statements in question against the three non-declarant defendants. *See Becker*, 502 F.3d at 130. Acknowledging this point, the government "seeks to offer each defendant's redacted statement only as evidence against *that* defendant." (Resp. at 48 (emphasis added); *see also* Docket Entry No. 159, at 3.)

As a general matter, even where multiple defendants are charged with the same crimes, the use of an out-of-court admission does not violate the Confrontation Clause when accompanied by an instruction limiting its admissibility as against the declarant defendant. *See In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 135–37 (2d Cir. 2008); *United States v. Harris*, 167 F. App'x 856, 859 (2d Cir. 2006) (no *Crawford* issue where statements were offered only against declarant and accompanied by proper jury instruction); *United States v. Newell*, 578 F. Supp. 2d 209, 213 (D.Me. 2008) (same); *A. S. Goldmen, Inc. v. Phillips*, 2006 WL 1881146, at *33 (S.D.N.Y. July 6, 2006) (same); *see also CSX Transp., Inc. v. Hensley*, 129 S. Ct. 2139, 2141 (2009) (juries are presumed to follow limiting instructions). An exception may exist where there is an "overwhelming probability" that the jury will be unable to

follow such an instruction. *See Jass*, 569 F.3d at 56 n.5 (quoting *Richardson*, 481 U.S. at 208); *see also United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) (limiting instructions insufficient if they require jury to perform "mental acrobatics"). However, the mere possibility that a jury could infer from other, admissible evidence that a properly-redacted statement refers to a non-declarant defendant does not create such an exception. *See Richardson*, 481 U.S. at 208.

Here, in addition to the redactions discussed in Part II.B.1, *supra*, the court intends to instruct the jury—contemporaneously with the statements' introduction at trial—that each statement may only be considered as against the declarant. Furthermore, the court will enumerate a list of uses for which the statements may *not* be considered, *e.g.*, to prove a non-declarant's membership in any of the conspiracies, or to prove a non-declarant's intent to achieve any of the conspiracies' objectives. *See United States v. Snype*, 441 F.3d 119, 128–30 (2d Cir. 2006) (finding that similar instructions rendered admission of defendant's statement mere harmless error). The court will reiterate these instructions in its final jury charge. *See United States v. Walden*, 175 F. App'x 308, 315 (11th Cir. 2006) (affirming conspiracy convictions against *Crawford* challenge where "the district court more than once instructed the jury that the statement was only to be considered in reference to [declarant]"). So long as the government refrains from introducing all three extradition statements simultaneously, there exists no "overwhelming probability" that the jury would be unable to follow these limiting instructions. *Richardson*, 481 U.S. at 208. Accordingly, neither severance nor suppression of the statements as against the respective declarants is required. The motions to preclude the use of the statements against the respective *non*-declarant defendants are granted.

C. **Severance and Substantial Prejudice**

Having declined to sever the trial on *Bruton/Crawford* grounds, the court next examines whether severance is necessitated by any prejudice to a defendant. *See* FED. R. CRIM. P. 14(a). Such a decision is within the "sound discretion" of the district court. *See United States v. Spinelli*, 352 F.3d 48, 54 (2d Cir. 2003). "There is a preference in the federal system for joint trials of defendants who are indicted together" because, in general, joint trials promote efficiency and better serve the interests of justice. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Cardascia*, 951 F.2d 474, 483 (2d. Cir. 1991) (noting that risk of prejudice to codefendants is generally outweighed by concerns for judicial economy, risk of inconsistent verdicts, and favorable position that later-tried defendants obtain from familiarity with prosecution's strategy). Joint trials are especially appropriate when the charged crimes allegedly arise out of a common scheme or plan. *See United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979) (citations omitted).

In order to succeed on a motion for severance, a defendant must show that the prejudice from a joint trial "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998); *see also United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) ("in order to prevail, the defendant must show not simply some prejudice but substantial prejudice") (internal quotation marks and citation omitted); *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) (describing defendants' burden in seeking severance as "heavy"). The Second Circuit has stated that "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Carson*, 702 F.2d 351, 366–67 (2d Cir. 1983) (affirming conviction of defendant who "played a less prominent role in the conspiracy than many of his co-defendants"). An exception might exist in cases where the

"sheer volume and magnitude of the evidence against one defendant . . . dwarfs the proof presented against his co-defendant . . . ." *Spinelli*, 352 F.3d at 55.

As an initial matter, it appears from the affidavits of participating law enforcement agents that there will be substantial overlap between the witnesses and evidence presented against each of the four defendants. Furthermore, the government alleges that the charges against defendants all arise out of a common scheme. (*See generally* Indictment.) Thus, judicial economy would be greatly facilitated by prosecuting all defendants together. *See Zafiro*, 506 U.S. at 537; *Girard*, 601 F.2d at 72. Given the evidentiary overlap, it is also clear that any later-tried defendants would benefit from a preview of the government's case. *See Cardascia*, 951 F.2d at 483. Thus, the court is not inclined to grant severance, barring demonstration by a defendant that a joint trial would substantially prejudice him. Ibrahim and Kadir argue that they are prejudiced by joinder because they are alleged to have joined the conspiracy later than their co-defendants. (*See* Ibrahim Mot. 11–12; Kadir Mot. 3.) Therefore, citing to *United States v. Kelly* and *United States v. Gallo*, they contend that a joint trial would subject them to "spillover" from wrongdoing attributed to their co-defendants, who were more involved with the alleged conspiracy. *See* 349 F. 2d 720, 756–56 (2d Cir. 1965); 668 F. Supp. 736, 750–51 (E.D.N.Y. 1987).

This case is easily distinguishable from *Gallo*, which involved a twenty-two count RICO indictment against multiple defendants. *See* 668 F. Supp. at 750–51. In *Gallo*, severance was held appropriate for several defendants charged only with Taft-Hartley violations and obstruction of justice, who had, despite not being Mafia members, been indicted together with numerous leaders of the Gambino crime family charged with murders, robberies, and extortions. *See id.* While it is true that Ibrahim and Nur are not named in the sixth count of the indictment, charging the other two defendants with Surveillance of Mass Transportation Facility, this count is quite

10

similar to the fifth count, charging Conspiracy to Attack Mass Transportation Facility, with which Ibrahim and Nur *are* charged. *Compare* 18 U.S.C.A. § 1992(a)(8) (West 2007) *with id.* § 1992(a)(4)(B) (West 2007). In contrast to the situation in *Gallo*, the substantive surveillance count charged here is not a more violent or heinous crime than the associated conspiracy count. Furthermore, much of the evidence introduced to prove the former will undoubtedly overlap with evidence of the latter. Accordingly, any prejudice to Ibrahim and Nur in this regard is minimal.

This case is similarly distinguishable from *Kelly*, where one defendant entered into the conspiracy several years after his co-defendants—the "nucleus" of the conspiracy—began operating; this defendant had a limited role, and was kept unaware of the conspiracy's full scope. *See* 349 F. 2d at 730–59. In contrast, all four defendants at bar are alleged to have intended to attack JFK, albeit while playing different roles in the overall conspiracy, and it is well settled that "differing levels of culpability and proof," to the extent they exist, do not rise to the level of substantial prejudice. *See Carson*, 702 F.2d at 366–67; *see also United States v. Kellerman*, 431 F.2d 319, 323 (2d Cir. 1970) (affirming conspiracy convictions against all four defendants even though "each defendant may not have been present on every occasion and each may have had a somewhat different role").

In sum, any risk of prejudicial spillover is minimal, and can be mitigated by specific limiting instructions to the jury. *See, e.g.*, *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (noting that even where risk of prejudice is high, less drastic measures, such as limiting instructions, often suffice); *Spinelli*, 352 F.3d at 55 (citing clear jury instruction as grounds to affirm conviction despite denial of severance); *Kelly*, 349 F.2d at 756–57 (noting that jury instruction might have cured prejudice incurred by less-culpable defendant); *see also Zafiro*, 506 U.S. at 540 (juries are presumed to be capable of following judge's instructions in determining

which evidence bears on the guilt of any single defendant). Accordingly, because defendants have failed to demonstrate prejudice substantial enough to warrant severance, and in light of the factors weighing in favor of a single trial, the court finds that a joint trial of all four defendants is appropriate in this case.

## III. CONCLUSION

For the reasons set forth above, Defreitas' motion to suppress items seized from his Brooklyn residence is denied in its entirety. Defendants' motions to suppress certain out-of-court statements are granted in part and denied in part. The motions to sever the trial are denied.

SO ORDERED.

Dated: Brooklyn, New York
       May 6, 2010

                                                  /s/
                                    DORA L. IRIZARRY
                                United States District Judge