```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,                          :
                                                   :       **MEMORANDUM & ORDER**
                -against-                          :
                                                   :       07-CR-543 (DLI)(SMG)
RUSSELL DEFREITAS,                                 :
       also known as "Mohammed,"                   :
KAREEM IBRAHIM,                                    :
       also known as "Amir Kareem"                 :
       and "Winston Kingston,"                     :
ABDUL KADIR,                                       :
       also known as "Aubrey Michael Seaforth,"    :
AND ABDEL NUR,                                     :
       also known as "Compton Eversley,"           :
                                                   :
                        Defendants.                :
-----------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

Familiarity with the background of this case is assumed. *See generally United States v. Defreitas*, 2010 WL 1850950 (E.D.N.Y. May 6, 2010); *United States v. Defreitas*, 2010 WL 1223244 (E.D.N.Y. Mar. 24, 2010). The government moves *in limine* to admit certain evidence against defendants Russell Defreitas and Abdel Nur as direct evidence of the charged conspiracies, contending that it falls outside the scope of Federal Rule of Evidence 404(b). (*See generally* Docket Entry No. 206 ("Gov't Mot."); Docket Entry No. 245 ("Gov't Reply").) In the alternative, the government moves to admit the same evidence as an exception to Rule 404(b). Defreitas alone opposes the government's motion.[1] For the reasons set forth below, the motion is

---

[1] (*See generally* Docket Entry No. 235 ("Resp.").) At the May 7, 2010 status conference, defendants were originally given until May 14, 2010 to respond to the government's motion. Defendant Defreitas requested and was granted an extension until May 17, 2010 (*see* Docket Entry No. 228), on which date he timely filed his response. Defendant Nur, however, filed no response and requested no extension. Accordingly, the government's motion as to Nur is considered unopposed.

1

granted in part with decision reserved in part as to Defreitas, and granted in part and denied in part as to Nur.

## BACKGROUND

The government describes its proffered evidence with respect to Defreitas as:

> [A]udio and video recordings of statements made by Defreitas to government witnesses and coconspirators [wherein he] discusses . . . international travel under false names, welfare fraud, building and detonating explosives in Guyana and stealing cargo from [JFK] . . . as well as additional ideas for criminal activity, including obtaining firearms from a foreign country and attacking targets in the vicinity of JFK Airport, such as a nearby Jewish school or neighborhood.

(Gov't Mot. at 1.) The government additionally proffers evidence that Defreitas "made efforts to secure false travel documents to assist [a] coconspirator in traveling illegally to the United States," as well as statements in which Defreitas "informed the coconspirator that he had helped illegal aliens enter the United States before." (*Id.* at 2.) As against Nur, the government moves to introduce recordings of conversations between several of his alleged coconspirators relating to Nur's arrest "in Guyana in February 2007 for allegedly engaging in sexual assault. The conspirators discussed the arrest, its effect on the conspiracy and Nur's involvement therein." (*Id.*)

The government moves to admit the above evidence under two theories.[2] First, it contends that it is admissible as direct evidence of the charged conspiracies, making Rule 404(b) inapplicable. (*See* Gov't Mot. at 2.) Specifically, the government contends that Defreitas' recorded conversations are "direct evidence of conspiratorial intent," and serve to "explain[] the actions and tactics of the plotters." (*Id.* at 3.) Defreitas counters that "the proffered evidence . . .

---

[2] (*Id.* at 6.) The government originally moved to admit the evidence under two additional theories: (1) as background evidence to demonstrate the mutual trust between Defreitas and the cooperating witness (*see* Gov't Mot. at 4); and (2) to counter any potential entrapment defense. (*See id.* at 8–9.) Defreitas has conceded the first issue, and proffers that he will not raise an entrapment defense, rendering both theories moot. (*See* Defreitas Resp. at 3, 5.)

2

are tangential issues, easily excised, which, at best, would improperly shift a jury's focus from the material issues in the case." (Resp. at 1.) Furthermore, he contends that the recorded statements were "merely boastful puffing," which were "never meant to be taken seriously." (*Id.* at 2.)

Assuming, *arguendo*, that the above evidence does fall within the scope of Rule 404(b), the government argues in the alternative that all of it is admissible under established exceptions to that rule. (*Id.* at 5–8.) Specifically, the government contends that it is offering the evidence in order to show defendants' preparations, plans, knowledge, and motives, and not their criminal propensity. Defreitas rejects these contentions, and further argues that even if the evidence in question is being offered for a proper purpose, its probative value is substantially outweighed by the risk of unfair prejudice. (Resp. at 4.)

## DISCUSSION

**A.  Legal Standards**

Rule 404(b), which governs the admissibility of evidence concerning a defendant's other bad acts and uncharged crimes, provides, in relevant part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

FED. R. EVID. 404(b). "[E]vidence of uncharged criminal activity is *not* considered other crimes evidence . . . if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (emphasis added) (citation and internal quotation marks omitted); *see also United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992). "[W]here it is not manifestly clear that

3

the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).

The Second Circuit has adopted "an inclusionary approach" to Rule 404(b) evidence, precluding admission only when evidence of other bad acts is offered to demonstrate a defendant's criminal propensity. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (internal quotation marks omitted). The relevant standard was set forth in *United States v. Edwards*, which held that evidence of other bad acts is correctly admitted if: "(1) it [is] offered for a proper purpose; (2) it [is] relevant to a disputed trial issue; (3) its probative value is [not] substantially outweighed by its possible [unfair] prejudice; and (4) the trial court administer[s] a proper limiting instruction." 342 F.3d 168, 176 (2d Cir. 2003) (citations omitted). A non-exhaustive list of "proper purposes" is set forth in Rule 404(b) itself, as quoted above.

Regarding the second inquiry, the inclusionary approach "does not obviate the need to identify the fact or issue to which the evidence is relevant." *United States v. Mercado*, 2009 WL 2096234, at *5 (2d Cir. July 17, 2009) (internal quotation marks omitted). "There must be a clear connection between the prior act evidence and a disputed issue at trial." *Id.*; *see also United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (probative value of other bad acts "depends largely on whether or not there is a close parallel between the crime charged and the acts shown") (citation and internal quotation marks omitted).

With respect to the third inquiry, a court must apply Federal Rule of Evidence 403 to determine if the probative value of a particular piece of evidences is substantially outweighed by its potential for unfair prejudice. *See United States v. Gilan*, 967 F.2d 776, 782 (2d Cir. 1992). To demonstrate that the evidence is more probative than prejudicial, the government must show that it would not "unduly inflame the passion of the jury, confuse the issues before the jury, or

inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

     **B.**     **Evidence Against Defendant Defreitas**

           **1.**     **Travel Under False Names, Transportation of Weapons, Welfare Fraud, and Discussion of Alternate Targets**

In order to satisfy the general notice requirement of Rule 404(b), the government must "identif[y] each crime, wrong or act by its specific nature (*e.g.*, sale of cocaine), place (*e.g.*, New York City), and approximate date (*e.g.*, July 1986), to the extent known to the government." *United States v. Melendez*, 1992 WL 96327, at *1 (S.D.N.Y. Apr. 24, 1992). The government has failed to do so with respect to any conversations relating to Defreitas' travelling under false names, transporting weapons, or committing welfare fraud. (Resp. at 4 n.1; *see also* Gov't Reply at 6.) Accordingly, the court reserves judgment on the admissibility of this evidence until the government provides the transcripts of the conversations in question.

Regarding Defreitas' alleged statements identifying "a nearby Jewish school" as an alternate target for the plot, the government similarly has failed to provide the transcript of the conversation for the court's review. The transcript(s) would permit the court to more effectively evaluate the government's alternative arguments that the statements in question: (1) constitute direct evidence of the charged crimes, and, thus, fall outside the scope of Rule 404(b); or (2) satisfy the requirements of Rule 404(b) and Rule 403. The court shares Defreitas' concerns that the risk of undue prejudice created by these statements may substantially outweigh their probative value. Specifically, evidence of Defreitas' feelings towards those of the Jewish faith presents a strong possibility of "unduly inflam[ing] the passion of the jury." *Quattrone*, 441 F.3d at 196.

The court also notes Defreitas' contention that "[m]ost . . . of the material points the government would seek to make in these statements are duplicated in other less controversial parts of the tapes." (Resp. at 4.) However, Defreitas did not provide these tapes or transcripts for the court's review. Accordingly, to aid the court in evaluating this position, Defreitas is also directed to submit the transcripts of the conversations to which he refers.

### 2. Stealing Cargo from JFK

According to the government, Defreitas discusses his prior involvement with cargo theft in the context of several conversations with a cooperating witness, whom Defreitas allegedly believed to be a member of the plot. (Gov't Reply at 1.) The conversations took place during several reconnaissance trips Defreitas and the cooperating witness made to JFK for the alleged purpose of plotting the attack. (*Id.* at 1–2.) The government has proffered that Defreitas' role in this plot was to serve as the "JFK Airport expert," by virtue of his employment there in the 1990s. (*Id.* at 1–2.)

As an initial matter, the government argues that these and other recorded statements are beyond the scope of Rule 404(b) because the statements themselves were made in the course of the alleged conspiracies, notwithstanding the fact that the prior acts to which Defreitas refers in the statements occurred long before. (*See* Gov't Mot. at 3.) While this argument is compelling, it is not manifestly clear that the recordings are intrinsic proof of the charged crime. Therefore, the court, in an abundance of caution, applies the Rule 404(b) analysis set forth in *Edwards*. *See Nektalov*, 325 F. Supp. 2d at 372.

Here, evidence of Defreitas' prior bad acts at JFK is being offered to show his knowledge of the target he was allegedly conspiring to attack (Gov't Mot. at 6)—clearly a proper purpose under Rule 404(b). The evidence is also being offered to show that Defreitas had the opportunity

to commit the crimes charged—another proper purpose. *See* FED. R. EVID. 404(b). That the statements in question were allegedly made in the course of a reconnaissance trip shows preparation for the alleged crimes, which is yet another proper purpose under Rule 404(b). The first *Edwards* inquiry is therefore satisfied. *See* 342 F.3d at 176.

In order to satisfy the second *Edwards* inquiry, Defreitas' statements concerning his prior thefts at JFK must be relevant to a disputed trial issue. *See id.* One such issue presumably will be whether Defreitas had the requisite intent for each of the unlawful agreements to succeed. A statement to the effect that he knew about the "law enforcement activities and escape routes" at JFK—the target of the alleged plot—by virtue of his earlier involvement in cargo theft is clearly relevant to demonstrating that Defreitas intended for the conspiracies to achieve their illegal goals without detection by law enforcement. (Gov't Reply at 2.) Whether or not Defreitas was "merely exaggerating" in these recorded statements is, like the overall question of his intent, for the jury to decide. (Resp. at 2.)

Defreitas argues that the evidence is nevertheless inadmissible because it is overly prejudicial. However, the potential for prejudice is mitigated by the fact that non-violent larceny is a far less serious crime than those for which Defreitas is being tried. *See United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000). Furthermore, defendant's concerns about "small isolated portions" of the recordings being played out of context may be addressed via cross-examination. (Resp. at 4.) Any remaining prejudice regarding the statements about cargo thefts certainly does not "substantially outweigh" the probative value of evidence that goes directly to the defendant's intent to commit the charged crimes. *Edwards*, 342 F.3d at 176. Accordingly, the statements concerning Defreitas' theft of cargo from JFK are admissible for the limited purposes

proffered by the government. The court will provide an instruction to this effect when the statements are introduced at trial, and another when the jury is charged at the close of the case.

### 3. History With Explosives in Guyana

Defreitas' statements concerning his background with explosives in his native Guyana arise in the same context as those regarding the cargo theft.[3] Here, the government intends to offer evidence of the prior bad acts to show Defreitas' motive and intent. (*See* Gov't Reply at 2–3.) As both motive and intent are proper purposes under Rule 404(b), the first *Edwards* inquiry is satisfied.

Regarding the second *Edwards* inquiry, the prior bad act evidence in question is clearly connected to a disputed trial issue. Assuming that Defreitas will not concede criminal intent, the statement, "[w]hen I was a youth I could make a bomb. I can knock this place" is highly relevant to showing that he intended for the alleged conspiracies to succeed and had the capability to make it succeed. What the defendant meant by this statement and what weight to give it is for the jury to determine.

With respect to the third *Edwards* inquiry, Defreitas argues that the "decades-old allegations of bomb making will unfairly paint [him] as violent." (Resp. at 4.) However, while such prior bad acts are admittedly more prejudicial to Defreitas than evidence of non-violent larceny, they still do not constitute "conduct more serious than the charged crime[s]." *See Williams*, 205 F.3d at 34; *see also United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999); *United States v. Roldan-Zapata*, 916 F.2d 795, 803 (2d Cir. 1990). Accordingly, the danger of unfair prejudice does not outweigh the probative value, and Defreitas' statements regarding his history with explosives are admissible. The court will provide appropriate limiting instructions.

---

[3] (*See* Gov't Reply at 2.) The Rule 404(b) analysis as set forth in *Edwards* is appropriate here for the same reasons set forth in Part B.2, *supra*. *See Nektalov*, 325 F. Supp. 2d at 372.

#### 4. Assisting Illegal Entry into the United States

The government's final proffered evidence against Defreitas is evidence of his pursuit of illegal travel documents, allegedly to assist a coconspirator's entry into the United States. (Gov't Mot. at 2.) Unlike the evidence discussed in Parts B.2–3, this evidence falls outside the scope of Rule 404(b), as it arises out of the same series of transactions as the charged offenses. *See Carboni*, 204 F.3d at 44. Defreitas is charged with, *inter alia*, Conspiracy to Attack a Public Transportation System, *see generally* 18 U.S.C. § 2332f(a)(2), and a key inquiry in any conspiracy charge is whether the defendant joined the alleged conspiracy with the intent to help it succeed. Any evidence of Defreitas' efforts to bring an alleged coconspirator to the United States in order to assist with such an attack, or evidence of his ability to do so, goes directly to such an inquiry.

Even if the court applies the *Edwards* analysis, this evidence is still clearly admissible as an exception to Federal Rule of Evidence 404(b). The government moves to introduce it as proof of Defreitas' preparation, plan, and knowledge, all proper purposes under that Rule. Furthermore, there is a clear connection between the proffered evidence and the disputed trial issue of whether Defreitas intended for the charged conspiracies to succeed. *See Mercado*, 2009 WL 2096234, at *5. Finally, these prior bad acts are far less serious than those for which Defreitas is being tried, weighing strongly against a finding of undue prejudice. *See Williams*, 205 F.3d at 34; *see also Livoti*, 196 F.3d at 326. In sum, any evidence of Defreitas' efforts to bring coconspirators into the United States, legally or otherwise, is admissible.

### C. Evidence Against Defendant Nur

The government offers recordings of conversations in which Nur's codefendants discuss his arrest for sexual assault for the purpose of "explain[ing] actions taken by the conspirators in

relation to the charged plot." (Gov't Mot. at 2.) According to the government, "Nur's arrest in Guyana had direct repercussions on the membership of the plot, and the recorded discussions of that arrest are thus critical to understand the conspirators' actions during the course of the charged conspiracies." (*Id.* at 3–4.)

Based on this limited proffer, the evidence in question appears to fall outside the scope of Rule 404(b) as it arises from the same series of transactions as the charged offenses. *See Carboni*, 204 F.3d at 44. Specifically, the proffered conversations appear to involve the very defendants charged at bar, and were apparently recorded during the time frame outlined in the indictment. However, while the *fact* of Nur's arrest may be direct evidence of the charged conspiracies, the court sees no relevance as to the *nature of the crime* for which Nur was arrested. Accordingly, the government must redact those portions of the recordings that refer to sexual assault prior to introduction of these statements at trial.

## CONCLUSION

For the reasons set forth above, the government's motion *in limime* is granted in part, with decision reserved in part, as to Defendant Defreitas. The motion is granted in part and denied in part as to Defendant Nur.

SO ORDERED.

Dated: Brooklyn, New York
      June 3, 2010

/s/
DORA L. IRIZARRY
United States District Judge